# 2004 DTA 97

## TRIBUNAL DE CIRCUITO DE APELACIONES
## REGION JUDICIAL DE SAN JUAN

FELIX RENTAS MATOS, SU ESPOSA AMELIA MARTINEZ AGOSTO; ETC.
Demandantes-Peticionarios

v.

COOPERATIVA DE SEGUROS DE VIDA DE PUERTO RICO, COSVI
Demandada-Recurrida

--------------------

FELIX RENTAS MATOS, SU ESPOSA AMELIA MARTINEZ AGOSTO; ETC.
Demandantes-Recurridos

v.

COOPERATIVA DE SEGUROS DE VIDA DE PUERTO RICO, COSVI
Demandada-Peticionaria

Núms. Cons. KLCE-03-00568 / KLCE-03-00616

San Juan, Puerto Rico, a 27 de abril de 2004

Panel integrado por su Presidenta, la Juez Rodríguez de Oronóz,
y las Juezas Peñagarícano Soler y Bajandas Vélez

Bajandas Vélez, Jueza Ponente

[black redaction bars]

## TEXTO COMPLETO DE LA SENTENCIA

Comparecen ante nos el Sr. Félix Rentas Matos, su esposa Amelia Martínez Agosto, la sociedad de gananciales compuesta por ambos y sus hijas Amely y Awilda, de apellidos Rentas Martínez, mediante el recurso de *Certiorari* Núm. KLCE-03-00568. En el mismo nos solicitan la revocación de la Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 11 de febrero de 2003, recogida en la Minuta de igual fecha, la que fue notificada el 31 de marzo de 2003. En dicho dictamen, el TPI desestimó las causas de acción de las codemandadas Amelia Martínez Agosto y Amely y Awilda Rentas Martínez.

De otra parte, el 9 de mayo de 2003, la Cooperativa de Seguros de Vida de Puerto Rico (COSVI) presentó el recurso de *Certiorari* Núm. KLCE-03-00616 en el que nos solicita que revoquemos la Resolución dictada el 8 de abril de 2003, notificada el 10 de abril de 2003, que ordenó la descalificación de su perito médico.

Analizados cuidadosamente los recursos del epígrafe, los cuales fueron consolidados por Resolución del 1ro de julio de 2003, y el derecho aplicable, resolvemos modificar la resolución emitida el 11 de febrero de 2003 y revocar aquélla dictada el 8 de abril de 2003.

### I

El 17 de diciembre de 1999, ▇ el Sr. Félix Rentas Matos (Sr. Rentas Matos), su esposa, su sociedad de gananciales, y sus dos hijas presentaron demanda contra COSVI y la Cooperativa de Ahorro y Crédito de Oficiales de Custodia de Puerto Rico (Cooperativa). Apéndice, págs. 21-25. Alegaron que el 1ro. de julio de 1994, la Cooperativa le otorgó al Sr. Rentas Matos un préstamo asegurado por una Póliza de Seguro Colectiva de Vida de Crédito expedida por COSVI, que incluia el beneficio de cubierta por incapacidad física. ▇ Adujeron que como resultado de un accidente sufrido por el Sr. Rentas Matos el 4 de octubre de 1994, mientras realizaba labores como empleado de la Autoridad de Energía Eléctrica (AEE), éste quedó incapacitado. Expusieron que luego de innumerables tratamientos médicos y evaluaciones sin lograr recuperación, la Administración del Seguro Social y la AEE determinaron que éste tenía una incapacidad física total y permanente. Señalaron que dicho codemandante, además, había sido declarado incapacitado por el Fondo del Seguro del Estado (Fondo) en el 55 por ciento, mediante resoluciones dictadas el 3 de junio de 1997 (40 por ciento) y el 30 de noviembre de 1998 (15 por ciento).

Ante ello, los demandantes apuntaron que le reclamaron a COSVI el cumplimiento de la cláusula de la póliza relativa al pago del balance de los préstamos. ▇ Expusieron que luego de ello, la demandada pagó el balance de uno de los préstamos, negándose a satisfacer lo adeudado en el otro. A la luz de tales hechos, la parte demandante alegó el incumplimiento de COSVI con las obligaciones del contrato de seguro y solicitó el resarcimiento de sus daños y perjuicios. De este modo, se solicitó en la demanda el pago de $50,000 para el Sr. Rentas Matos y $25,000, para su esposa y sus hijas. Además, reclamaron la pérdida sustancial de ingresos de la sociedad de bienes gananciales valorada en $25,000, debido a que presuntamente la capacidad crediticia de ésta se había visto afectada por las actuaciones de COSVI. Finalmente, alegaron que por el sufrimiento del Sr. Rentas Matos la parte demandante tuvo "*gran vergüenza, malestar y un fuerte estado de desasosiego, debido a que se les ha tachado de incumplidores*", cuyos daños se fijaron en $30,000. Apéndice, pág. 24.

Luego de prórroga concedida al efecto, COSVI contestó la demanda en escrito fechado 3 de febrero de 2000. En la misma negó algunas alegaciones medulares de la demanda y aceptó otras. Entre sus defensas afirmativas adujo la innecesaria acumulación como partes de la esposa del Sr. Rentas Matos y sus dos hijas, porque éstas no formaban parte del contrato de seguro. También reservó su derecho a enmendar la contestación a la demanda tan pronto finalizara el descubrimiento de prueba. ■ Por su parte, la Cooperativa presentó su contestación a la demanda con fecha de 8 de febrero de 2000.

Después de varios incidentes procesales, las partes presentaron el Informe sobre Conferencia Preliminar entre Abogados (el Informe) fechado 27 de agosto de 2002. Del mismo surge que mediante Resolución y Sentencia Parcial de 14 de marzo de 2001, el TPI ordenó la desestimación y el archivo de la demanda contra la Cooperativa, restando COSVI como única parte demandada. En la parte del Informe relativa a las enmiendas a las alegaciones, COSVI expresó que: *"... habiendo hecho reserva para enmendar su Contestación a Demanda y levantar nuevas Defensas Afirmativas **incluye la defensa de prescripción** en contra de las demandantes, Amelia Martínez Agosto, Amely Rentas Martínez y Awilda Rentas Martínez. Cualquier enmienda adicional se notificará con veinte días de antelación a juicio."* (Énfasis nuestro.) Apéndice, pág. 36.

Surge asimismo de dicho Informe que todos los demandantes reclamaron de COSVI el resarcimiento de daños contractuales por su alegado incumplimiento de contrato, aduciendo que tales daños habían sido previstos por COSVI. Apéndice, pág. 38.

Por su parte, COSVI expuso en el Informe que había cumplido con todas las obligaciones del contrato de seguro y que cualquier daño que hubiese sufrido el Sr. Rentas Matos, no se debió a ningún acto, falta u omisión de dicha parte. Además, reconociendo que la posibilidad de que las codemandantes tuviesen una reclamación al amparo del Art. 1802 del Código Civil, indicó que *"... las acciones civiles presentadas por la esposa del demandante y por sus hijas están prescritas."* Apéndice, pág. 40. Acto seguido, expresó: *"[l]a determinación de en qué momento el agraviado tuvo el conocimiento del daño deberá hacerla el tribunal sentenciador a base de la prueba que se aporte sobre el particular."* Id. Alegó también que no tenía relación contractual alguna con la esposa e hijas del Sr. Rentas Matos, por lo que éstas no debían estar en el pleito. *Id.*

De otro lado, las partes llegaron a varias estipulaciones de hechos. Entre éstas, surge la siguiente: *"Las codemandantes Amelia Martínez Agosto; Amely Rentas Martínez y Awilda Rentas Martínez no forman parte del contrato de seguro suscrito entre COSVI y la Cooperativa de Ahorro y Crédito Oficiales de Custodia de Puerto Rico, ni son los beneficiarios de la póliza ni parte de los préstamos en controversia."* Apéndice, pág. 43, Estipulación Núm. 17.

Respecto a la prueba documental, las partes estipularon dos informes médico pericial suscritos por el perito médico de COSVI, Dr. Carlos Grovas Badrenas (Dr. Grovas), fechados 16 de septiembre de 1996 y 31 de mayo de 2002. Véase Apéndice, pág. 46. De igual modo, estipularon las cualificaciones del aludido perito.

Después de celebrada la Conferencia con Antelación al Juicio y varios otros incidentes relativos al descubrimiento de prueba, COSVI presentó Moción Solicitando Desestimación y Sobre Acumulación Indebida de Parte fechada 11 de septiembre de 2002. Planteó que la esposa del Sr. Rentas Matos y sus dos hijas no tenían legitimación activa para reclamarle el cumplimiento específico del contrato de seguros, ya que no eran, ni formaban parte del mismo, y menos aún, eran las beneficiarias de la cubierta de la póliza. Además, apuntó que si su reclamación estaba basada en el Art. 1802 del Código Civil, entonces ésta estaba prescrita. Fundamentó lo anterior en que fue el 17 de diciembre de 1997, que negó tener responsabilidad alguna bajo la póliza, constituyendo dicha fecha el comienzo del término prescriptivo para reclamarle cualquier daño extracontractual. Argumentó, además, que el alegado daño sufrido por éstas, al igual que la identidad de quien presuntamente había cometido el acto negligente, habían sido conocidos en ese momento por las aludidas codemandantes. Apéndice, págs. 59-106. De conformidad con este razonamiento, COSVI esgrimió que cuando estas partes

presentaron la demanda el 17 de diciembre de 1999, la misma estaba prescrita.

Por otro lado, respecto a la defensa de prescripción, COSVI alegó que había hecho una reserva de derecho en su contestación a la demanda, a la cual los demandantes no se opusieron. También se basó en las Reglas 15.1 y 18 de Procedimiento Civil, 32 LPRA Ap. III, R. 15.1 y 18, sobre la indebida acumulación de partes. Finalmente, solicitó como remedio la desestimación de las reclamaciones de la Sra. Martínez Agosto, y las de sus hijas.

En su oposición a la desestimación presentada el 24 de enero de 2003, las demandantes se ampararon en la doctrina sentada por el Tribunal Supremo de Puerto Rico en *Ramos v. Orientalist Rattan Furnt., Inc.,* 130 DPR 712 (1992), la cual permite la concesión de daños morales al amparo del Art. 1802 del Código Civil, por el incumplimiento de obligaciones contractuales. Así, sostuvieron que los daños y perjuicios reclamados por éstas eran previsibles al contraerse la obligación y que el incumplimiento de COSVI había afectado, en forma apreciable su estado emocional. Apéndice, pág. 108. De igual modo, precisaron que los daños sufridos por ellas surgieron de una situación prevista por COSVI, pues al acudir el Sr. Rentas Matos a llenar el formulario de beneficios sobre incapacidad, ésta advino en conocimiento de la precaria situación económica por la que éste atravesaba.

Por otra parte, respecto a la defensa de prescripción aducida por COSVI, los demandantes arguyeron que cuando ésta contestó la demanda el 3 de febrero de 1999, no la alegó, por lo que la renunció. Puntualizaron que en sus posteriores comparecencias en el caso, COSVI tampoco la levantó, por lo que no podía beneficiarse de ella ahora.

El 24 de enero de 2003, la parte demandante también presentó una moción notificando varias enmiendas a su prueba documental en el Informe de Conferencia con Antelación al Juicio. Apéndice, págs. 115-119. Entre éstas incluyó el Informe de su perito y cuatro demandas presentadas en contra del Dr. Grovas, el perito de COSVI. Más adelante, el 6 de febrero de 2003 presentó Moción Solicitando Descalificación de Perito.

El 11 de febrero de 2003, al inicio del primer día del juicio, el TPI escuchó los respectivos argumentos de las partes en torno a la moción de COSVI para desestimar las reclamaciones de la esposa e hijas del Sr. Rentas Matos. En Corte Abierta, la declaró con lugar y desestimó dichas causas de acción. Apéndice, pág. 7. En su dictamen, recogido en la Minuta de dicha fecha, el TPI concluyó que las aludidas codemandantes no tenían causa de acción alguna contra COSVI, a tenor con el Art. 1054 del Código Civil porque no formaban parte del contrato de seguro. Véase Minuta de 11 de febrero de 2003, notificada el 31 de marzo de 2003. Apéndice, págs. 1-14.

En dicha vista, además de discutirse otros aspectos del caso, el TPI escuchó argumentos con relación a la descalificación del perito de COSVI. No obstante, concedió a COSVI diez (10) días para que replicara la aludida moción e igual plazo a la parte demandante para someter un memorando de derecho sobre la descalificación. Apéndice, pág. 13. Finalmente, el TPI aprobó las enmiendas al Informe solicitadas por los demandantes y reseñaló el juicio para los días 26 y 27 de agosto de 2003.

Siguiendo las instrucciones impartidas por el TPI, el 21 de febrero de 2003, la parte demandante presentó Moción Suplementaria de la Solicitud para Descalificación de Perito. Apéndice, págs. 59-94. Esgrimió que, a tenor con los contratos de prestación de servicios médicos otorgados por el Fondo y el Dr. Grovas, dicho galeno se había obligado a no representar intereses adversos al Fondo ante cualquier foro. Precisó que existen nueve récords médicos del demandante en el Fondo y que las evaluaciones médicas y decisiones de dicha agencia que surgen de tales récords pueden estar en conflicto con la opinión pericial del Dr. Grovas. Para sustentar sus planteamientos, los demandantes incluyeron copias de los contratos de prestación de servicios correspondientes al 23 de julio de 1996, 9 de julio de 2001 y 1ro de julio de 2002.

Después de una prórroga al efecto, el 9 de abril de 2003, COSVI presentó su oposición a la descalificación de su perito. Apéndice del recurso KLCE-03-00616 (en adelante Apéndice de COSVI), págs. 96 a 115. Adujo que por haber estipulado los dos informes periciales del Dr. Grovas, la parte demandante no podía ir en contra de sus propios actos y solicitar que dicho perito fuese descalificado. Además, destacando la preparación médica y profesional del perito, reclamó que el mismo le era necesario para probar su caso. Aclaró que en el caso de autos, el Dr. Grovas expresará su opinión sobre la incapacidad parcial del demandante, utilizando sus conocimientos y preparación académica. Precisó que *"[l]a determinación a la que llegó el perito médico de COSVI no es distinta a la que llegó el Consultor Médico de la Comisión Industrial, Dr. Edgardo R. Joglar Cacho, quien también es Cirujano Ortopédico y quien examinó al demandante el 26 de marzo de 1997 debido a que éste no estaba de acuerdo con la determinación a la que llegó el FSE al incapacitarlo en un 25 por ciento por el accidente ocurrido el 1ro de febrero de 1987 mientras limpiaba un condensador en la Autoridad de Energía Eléctrica"*. (Énfasis nuestro.) Apéndice de COSVI, págs. 98-99. Destacó que la reclamación denegada en autos fue por el accidente del trabajo ocurrido el 4 de octubre de 1994, en el cual el demandante sufrió la fractura de su clavícula. Intima que la incapacidad resultante de este accidente, según la resolución del Fondo, era de 25 por ciento, y que posteriormente fue elevada a 40 por ciento por su condición emocional. Finalmente, apuntó que el tribunal no había tenido la oportunidad de escuchar y evaluar las cualificaciones del perito mediante un *"voir dire"*, que es el momento en el que éste es cualificado y la parte demandante lo puede contrainterrogar.

Atendidas las alegaciones de las partes y los contratos sometidos, mediante resolución emitida el 8 de abril de 2003 y notificada el 10 de abril de 2003, el TPI ordenó la descalificación del Dr. Grovas como perito médico de COSVI en el caso, y le concedió a ésta quince días para informar uno nuevo. Apéndice de COSVI, págs. 2 y 3.

Inconformes con la desestimación de las causas de acción de la Sra. Martínez Agosto y sus hijas, los demandantes presentaron ante nos, el 30 de abril de 2003, el recurso Núm. KLCE-03-00568. En el mismo hicieron el siguiente señalamiento de error:

*"ERRO EL HONORABLE TRIBUNAL DE INSTANCIA AL ORDENAR LA DESESTIMACIÓN DE LAS ACCIONES PRESENTADAS POR LA ESPOSA Y LAS HIJAS DEL PETICIONARIO FELIX RENTAS MATOS, BASADO EN EL FUNDAMENTO DE INDEBIDA ACUMULACIÓN DE PARTES POR HABER RECLAMADO BAJO EL ARTICULO 1054 DEL CODIGO CIVIL, NO SIENDO ELLAS PARTES CONTRATANTES, Y NO HABER PRESENTADO SUS RECLAMACIONES AL AMPARO DEL ARTICULO 1802, 31 LPRA sec. 5141"* ■

Por su parte, COSVI, por no estar de acuerdo con lo resuelto respecto a su perito, presentó el 9 de mayo de 2003, el recurso Núm. KLCE-03-00616. En éste planteó que:

*"ERRO EL TRIBUNAL DE INSTANCIA AL DESCALIFICAR PREMATURAMENTE AL PERITO ANUNCIADO POR LA COOPERATIVA DE SEGUROS DE VIDA DE PUERTO RICO (COSVI)."* ■

Por razón de un cambio de representación de COSVI y a solicitud de ésta, el 1ro. de julio de 2003, admitimos a dicho nuevo letrado y autorizamos la consolidación de los recursos.

El 14 de agosto de 2003, ambas partes presentaron Moción en Auxilio de Jurisdicción solicitando la paralización del juicio pautado para los días 26 y 27 de agosto de 2003. Mediante Resolución de 15 de agosto de 2003 ordenamos la paralización de los procedimientos ante el TPI.

Teniendo el beneficio de las comparecencias de las partes en ambos recursos, pasamos a resolver.

## II

Entre las normas generales que para las alegaciones establecen las Reglas de Procedimiento Civil vigentes están aquéllas atinentes a las defensas afirmativas. Así, la Regla 6.3 de Procedimiento Civil, 32 LPRA Ap. III, R. 6.3, dispone:

*"Al responder a una alegación precedente, las siguientes defensas deberán expresarse afirmativamente: transacción, aceptación como finiquito, laudo y adjudicación asunción de riesgo, negligencia, exoneración por quiebra, coacción, impedimento, falta de causa, fraude, ilegalidad, falta de diligencia, autorización, pago, exoneración, cosa juzgada, **prescripción adquisitiva o extintiva**, renuncia y cualquier otra materia constitutiva de excusa o de defensa como una reconvención, o una reconvención como una defensa, el tribunal, si así fuere de justicia y bajo los términos que estime apropiados, considerará la alegación como si hubiere sido correctamente denominada."* (Énfasis nuestro.)

De ordinario, las defensas afirmativas antes enumeradas se entenderán renunciadas si no son oportunamente levantadas de manera expresa y específica en la primera alegación responsiva o en la contestación a la demanda de la parte a quien le pueden favorecer las mismas. *Olmeda Nazario v. Sueiro Jiménez,* 123 DPR 294, 299 (1989); *Odriozola v. S. Cosmetic Dist. Corp.,* 116 DPR 485, 506 (1985); *Ramos v. Trans Oceanic Ins. Co.,* 103 DPR 298, 300 (1985). Como excepción, una defensa afirmativa puede ser invocada por primera vez después de que una parte ha realizado su primera alegación responsiva, sólo con autorización del tribunal. Ello, predicado en que el solicitante demuestre: (1) que la omisión de no alegar la defensa afirmativa a tiempo no se debió a falta de diligencia, y (2) que con la alegación tardía de la defensa afirmativa no ha de causarse sustancial perjuicio a la parte contra quien se opone en términos de una solución justa, rápida y económica del litigio. Véase la Regla 13.1 de Procedimiento Civil; *López Stubbe v. Gus Lallande,* 144 DPR 774 791-792 (1998); *Texaco P.R. Inc. v. Díaz,* 105 DPR 248, 250 (1976), y *Epifanio Vidal, Inc. v. Suro,* 103 DPR 793, 794-796 (1975).

De otro lado, es norma reiterada que la prescripción constituye una materia sustantiva y no procesal. *Vega Lozada v. J. Pérez y Cía.,* 135 DPR 746 (1994). A su vez, los Art. 1873 al 1875 del Código Civil, 31 LPRA Secs. 5302-5304, establecen las formas en que ésta puede ser interrumpida.

Para que la prescripción extintiva surta efecto sólo es necesario el transcurso del término legal fijado por el Código Civil. Art. 1861 del Código Civil, 31 LPRA Sec. 5291. Esta se fundamenta en la inercia del acreedor de un derecho durante un tiempo determinado, la cual se interrumpe mediante la manifestación inequívoca de un acto de voluntad contrario al mantenimiento de la situación inerte. *Galib Frangie v. El Vocero de Puerto Rico,* 138 DPR 560 (1995); *García Aponte et al v. ELA et al,* 135 DPR 137 (1994); *Zambrana Maldonado v. ELA,* 129 DPR 740 (1992). En *Martínez v. Sociedad de Gananciales,* 145 DPR 93 (1998), el Tribunal Supremo expresó:

*"El fundamento detrás de esta figura [la prescripción extintiva] es el imperativo de castigar la inercia en el ejercicio de los derechos y asegurar el 'señorío de las cosas' al evitar litigios difíciles de adjudicar debido a la antigüedad de las reclamaciones, (Citas omitidas).*

*La interrupción de la figura de la prescripción se basa, por tanto, en la actividad o ruptura de aquella inercia. El fundamento reconocido de interrupción es la manifestación inequívoca de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo. (Citas omitidas.)"* Cita a las págs. 101-102.

No obstante lo anterior, el Art. 1873 del Código Civil de Puerto Rico, 31 LPRA Sec 5303, dispone que *"la prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial*

*del acreedor y por cualquier acto de reconocimiento de deuda por el deudor"*.

De otra parte, el Art. 1802 del Código Civil, 31 LPRA Sec. 5141, establece que *"[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado"*. Las acciones encaminadas a exigir responsabilidad civil extracontractual prescriben al transcurrir un año. Art. 1868 del Código Civil, 31 LPRA Sec. 5298. De acuerdo a la teoría cognoscitiva del daño, imperante en nuestra jurisdicción, dicho término prescriptivo comienza a decursar desde el momento en que la víctima del daño tiene conocimiento del mismo. *Myriam Vera Morales, etc. v. Dr. Alfredo Bravo Colón*, **2004 J.T.S. 40**, Opinión de 27 de febrero de 2004. *"Por lo tanto, el término para ejercer las acciones comienza a transcurrir, no cuando se sufre el daño, sino cuando se conocen todos los elementos necesarios para poder ejercer la acción"*. *Padín Espinosa v. Cía. Fom. Ind.*, 150 DPR 403, 411 (2000). Véase además *Delgado Rodríguez v. Nazario de Ferrer*, 121 DPR 347, 361 (1988); *Colón Prieto v. Géigel*, 115 DPR 232 (1994). Así, *"... **no basta tener conocimiento del daño, sino que resulta imprescindible el conocer quién es el autor del mismo para dirigir la demanda contra él.**"* (Énfasis en el original.) *Vera v. Dr. Bravo, supra*, a la pág. 740.

Respecto a los daños contractuales, el Código Civil de Puerto Rico dispone en su Art. 1054, 31 LPRA Sec. 3018, que *"[q]uedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas"*. Por su parte, el Art. 1057 del Código Civil, 31 LPRA Sec. 3021, define la culpa o negligencia en el cumplimiento de las obligaciones como *"... la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de las personas, del tiempo y del lugar. Cuando la obligación no exprese la diligencia que ha de prestarse en su cumplimiento, se exigirá la que correspondería a un buen padre de familia"*. Según el Art. 1060 de dicho cuerpo, 31 LPRA Sec. 3024, *"[l]os daños y perjuicios de que responde el deudor de buena fe son los previstos o que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de la falta de cumplimiento..."*.

En *Ramos v. Orientalist Rattan Furnt. Inc., supra*, el Tribunal Supremo explicó que *"las acciones derivadas de contratos tienen por objeto que se cumplan las promesas contractuales sobre las que las partes de un contrato otorgaron su consentimiento"*. *Santiago Nieves v. ACAA*, 119 DPR 711, 716 (1987) citado en *Ramos v. Orientalist Rattan Furnt. Inc.*, a la pág. 721. Asimismo, distinguió que la culpa o la negligencia a la que se refiere el Art. 1802 del Código Civil es *"aquélla no relacionada con una obligación anterior y que da lugar a las acciones que, hasta la publicación del Código Civil Español, se conocían con el nombre de cuasi delitos y como antiguamente, en el Derecho Común se denominaban ex delicto"*. *Id. "Sin embargo, la 'culpa extracontractual no nace de la voluntad de las partes, sino del incumplimiento de unas obligaciones y de unos deberes impuestos por la naturaleza y por la ley, necesarias a la convivencia social'. H.M. Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da Ed., San Juan, **Publicaciones JTS**, 1986, Vol. 1 Cap. I, a 42". Id. "[A]hora bien, cuando se ha producido un daño, que además de quebrantar las normas de convivencia social constituyen incumplimiento de una obligación contractual **entre las partes**, la determinación de si procede una acción ex delicto o extra contractu se torna un tanto difícil"*. (Énfasis nuestro.) *Ramos v. Orientalist Rattan Furnt. Inc., supra*, pág. 722.

Tomando como marco lo anterior, el Tribunal Supremo de Puerto Rico resolvió en el aludido caso que *"... únicamente procede la acción en daños contractuales (Art. 1054) cuando el daño sufrido **exclusivamente** surge como consecuencia del incumplimiento de una obligación específicamente pactada, daño que no ocurriría sin la existencia del contrato. Ahora bien, resolvemos que **resulta procedente una reclamación de daños extracontractuales como resultado del quebrantamiento de un contrato, si el hecho resultante del daño constituye una violación del deber general de no causar daño a otro y a la vez incumplimiento contractual."* (Énfasis nuestro.) *Ramos v. Orientalist Rattan Furnt. Inc., supra,* a la pág. 727.

## III

Los peticionarios, en el recurso Núm. KLCE-03-00568, alegan que la demanda instada en este caso contiene una reclamación por incumplimiento de un contrato de seguro al amparo del Art. 1077 del Código Civil, 31 LPRA Sec. 3052, que permite al contratante Sr. Rentas Matos reclamar daños y perjuicios de COSVI de conformidad con *Ramos v. Orientalist Rattan Furnt. Inc.* También sostienen que la demanda aduce hechos suficientes para sostener una reclamación de la esposa y las hijas del Sr. Rentas Matos por daños y perjuicios al amparo del Art. 1802 del Código Civil, 31 LPRA Sec. 5141, en contra de COSVI. Asimismo, destacan que se pueden conceder daños morales por el incumplimiento de obligaciones contractuales, si tales daños son previsibles al contraerse la obligación, son consecuencia necesaria de la falta de cumplimiento y han afectado en forma apreciable el estado emocional de los reclamantes.

En su escrito de oposición, COSVI señala que la doctrina sentada en dicho caso no es aplicable al de autos. Precisa que no procede una reclamación de daños extracontractuales porque no existe un acto ilícito negligente o culposo que, a la vez, constituya un incumplimiento contractual. Puntualiza que los daños reclamados por las codemandantes son contractuales acorde con el Art. 1054 del Código Civil. Ello, porque éstas alegan que los daños fueron ocasionados por el hecho de que COSVI se negó a conceder los beneficios del contrato de seguros al Sr. Rentas Matos.

De otra parte, COSVI plantea que bajo la póliza, la esposa y las hijas del Sr. Rentas Matos no tienen legitimación activa, puesto que los deudores mancomunados, solidarios o garantizadores están excluidos expresamente de ésta. Finalmente, esboza que existe un sólo asegurado por el préstamo que es el Sr. Rentas Matos, por lo que el TPI actuó correctamente al desestimar la acción de daños de la esposa e hijas a tenor con el Art. 1054 del Código Civil. ■

Ante los varios planteamientos esbozados por las partes, el TPI únicamente resolvió que las aludidas codemandantes no tenían causa de acción contra COSVI acorde con el Art. 1054 del Código Civil y desestimó todas sus reclamaciones. Al así actuar, erró. Los argumentos de las partes no sólo sustentaban que las codemandantes no tenían una reclamación contractual en contra de COSVI, sino también en el Art. 1802 del Código Civil. Incidió el tribunal *a quo* al desestimar también la reclamación de las codemandantes a base de dicho artículo.

Es norma reiterada de derecho que *"[c]ualquier defecto en la denominación del pleito o en la súplica del remedio, no será óbice para que el tribunal conceda el remedio que proceda de acuerdo con las alegaciones y la prueba"*. Regla 70 de las Reglas de Procedimiento Civil, 32 LPRA Ap. III, R. 70. Esto es, independientemente de la forma en que recen las alegaciones de una parte, es obligación del TPI conceder el remedio a que ésta tenga derecho aun cuando ésta no lo haya solicitado. *Rivera Flores v. Cía. ABC,* 138 DPR 1, 8 (1995); *Neca Mortg. Corp. v. A&W Dev. S.E.,* 137 DPR 860, 868-869 (1995). De este modo, no debe resultar determinante para el TPI, al sometérsele una moción para desestimar una reclamación de una parte, el hecho de que se articule o no en la demanda, o aun en el Informe de Conferencia con Antelación al Juicio la base sustantiva de la misma. En autos, resultaba evidente que las codemandantes no formaron parte del contrato con COSVI, puesto que dicho hecho fue estipulado por éstas en el Informe Preliminar entre Abogados, pero también era patente que habiéndose fundamentado su razón de pedir en la doctrina de *Ramos v. Orientalist Rattan Furnt. Inc.,* los codemandantes podían tener derecho al resarcimiento de sus daños y perjuicios a base del Art. 1802 del Código Civil.

El TPI incidió al omitir en su Resolución el reconocimiento de que a las codemandantes les asistía el derecho a articular una reclamación de daños y perjuicios al amparo del Art. 1802 del Código Civil dimanantes del alegado incumplimiento de contrato de COSVI con el Sr. Rentas Matos. Claro está, tal reclamación es una contingente a aquélla aducida por éste. Esto es, la reclamación de la esposa e hijas del Sr. Rentas Matos depende, entre otros factores, de que primero prospere la aludida por éste y que se cumplan todos los criterios

enunciados por el Tribunal Supremo en *Ramos v. Orientalist Rattan Furnt., Inc., supra.*

De otro lado, el TPI falló al no dirimir la controversia claramente esbozada por las partes respecto a la defensa de prescripción levantada por COSVI en el Informe de Conferencia Preliminar por primera vez. Surge claramente del expediente que COSVI no levantó esta defensa en su contestación a la demanda, mas hizo en ésta una reserva de derechos que alegadamente los demandantes no objetaron. En su moción para desestimar, COSVI reiteró tales planteamientos. Por su parte, los demandantes se opusieron alegando que COSVI había renunciado la defensa de prescripción, por lo que no la podía levantar ahora. Habiéndose perfeccionado esta controversia, el TPI debió haberla resuelto. Conforme a la doctrina antes enunciada, el TPI tenía que haber resuelto si se permitía o no a COSVI beneficiarse de la defensa de prescripción que inicialmente no levantó en su contestación y si la reserva de derecho en la misma fue suficiente en derecho para aducirla posteriormente, a la luz de los criterios de diligencia y perjuicio a la otra parte que la jurisprudencia ha elaborado.

A tenor con el análisis que precede, concluimos que el TPI estuvo correcto en derecho al desestimar la reclamación contractual de la esposa e hijas del Sr. Rentas Matos amparada en el Art. 1054 del Código Civil por razón de que éstas no formaron parte del contrato de seguro con COSVI. Ahora bien, procede modificar el dictamen recurrido, en tanto y en cuanto puede ser entendido como que también desestimó las causas de acción de las mencionadas codemandantes a base del Art. 1802 del Código Civil y acorde con la doctrina de *Ramos v. Orientalist Rattan Furnt. Inc., supra.* Además, resulta necesario que el TPI dilucide la procedencia de la defensa de prescripción aducida por COSVI y de determinar permitir la misma, evalúe si la acción de las codemandantes al amparo del Art. 1802 está prescrita, a la luz de la teoría cognoscitiva del daño.

## IV

Recurso Núm. KLCE-03-00616

Es norma reiterada que el fin último de las Reglas de Evidencia es el descubrimiento de la verdad en todos los procedimientos judiciales. Regla 2 de las Reglas de Evidencia, 32 LPRA Ap. IV, R. 2. En ese proceso de búsqueda, el juez está llamado a interpretar estas reglas *"flexiblemente y de forma que garanticen una solución justa, rápida y económica a cualquier problema evidenciario".* *Id.* Esta misma filosofía subyace en las Reglas 52 ▮ y 53 de Evidencia relativas a la utilización del testimonio pericial. 32 LPRA Ap. IV, R. 52 y 53. Estas disposiciones responden a la realidad de que, en ocasiones, un juzgador de hechos necesita ayuda para entender la prueba, determinar un hecho en controversia, o en la adjudicación de la controversia que tiene ante sí, cuando ésta requiere conocimientos científicos, técnicos o especializados. Regla 52 de Evidencia. En tales casos, resulta necesaria la asistencia del testimonio pericial que ilustre al tribunal para que éste pueda ejercer su función adjudicativa cabal e informadamente. *"El criterio rector en relación con prueba de índole pericial lo es que la misma resulte de ayuda para el juzgador de hechos; siendo admisible dicho testimonio pericial, aun cuando el mismo verse, precisamente, sobre la cuestión a decidir ('ultimate fact') por el referido juzgador de los hechos."* *Pueblo v. Canino Ortiz,* 134 DPR 796, 804 (1993).

Así, antes de recibir un testimonio pericial, el tribunal debe hacer una determinación preliminar de que ese testigo está capacitado como perito en relación con la materia sobre la cual va a declarar. Regla 52 de Evidencia. Esta determinación preliminar depende de que el juez considere que le ha sido presentada evidencia suficiente que establece la condición que un testigo debe satisfacer para declarar en el juicio. Véase Chiesa Aponte, Ernesto L., *Práctica Procesal Puertorriqueña,* Vol. 1-Evidencia, **Publicaciones JTS,** 1979, págs. 14-16. En esta instancia, la condición a satisfacer es que el testigo esté cualificado para declarar como perito sobre una materia en particular, por cumplir con los requisitos que establece la Regla 53 de Evidencia. Dicha regla dispone lo siguiente:

*"Regla 53. Cualificación como perito*

*(A) Toda persona está cualificada para declarar como testigo pericial si posee especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficientes para cualificarla como un experto o perito en el asunto sobre el cual habrá de prestar testimonio. Si hubiere objeción de parte, dicho especial conocimiento, destreza, adiestramiento o instrucción deberán ser probados antes de que el testigo pueda declarar como perito.*

*(B) El especial conocimiento, destreza, experiencia, adiestramiento o instrucción de un testigo pericial podrán ser probados por cualquier evidencia admisible, incluyendo su propio testimonio."* 32 LPRA Ap. IV, R. 53.

De su texto se advierte que todo lo que la regla requiere de un testigo pericial es que *"éste posea especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficientes para cualificarlo como un experto o perito en el asunto sobre el cual habrá de prestar testimonio."* █

De otro lado, se ha resuelto que sólo de mediar objeción de la otra parte, el conocimiento, destreza o pericia del perito deberán ser probados antes de que el testigo pueda declarar como perito. *Rivera Rentas v. ACC Development Corp.,* 144 DPR 450 (1997). Ello, claro está, será de conformidad con las disposiciones de la Regla 9 de Evidencia. Dicha Regla establece en su parte pertinente:

*"(A) Cuestiones preliminares en relación a la capacidad de una persona para ser testigo, la existencia de un privilegio o la admisibilidad de evidencia serán determinadas por el tribunal sujeto a lo dispuesto en el inciso B de esta regla. Al hacer tales determinaciones, el tribunal no queda obligado por las Reglas de Evidencia, excepto aquellas relativas a privilegios.*

*(B) ...*

*(C) ...*

*(D) ...*

*(E) ...".* 32 LPRA Ap. IV, R. 9.

Sabido es que la pertinencia es condición necesaria para la admisibilidad de evidencia. Excepto cuando de otro modo se disponga por ley, la evidencia pertinente es admisible siendo la evidencia pertinente toda aquélla que haga de la existencia de un hecho más o menos probable de lo que sería sin tal evidencia. Regla 18 (B) de Evidencia, 32 LPRA Ap. IV, R. 18(B); *Pueblo v. Rosaly Soto,* 128 DPR 729 (1991). La pertinencia, a su vez, consiste en la materialidad del valor probatorio de la evidencia. Mientras que la materialidad va dirigida a la relación de la evidencia con los hechos y las cuestiones de derecho en controversia, el valor probatorio es la intensidad o fuerza con que esa evidencia hace de un hecho uno más probable. Chiesa *Op. Cit.,* págs. 22-27; *Pueblo v. Ortiz Pérez,* 123 DPR 316 (1989).

La pertinencia, como condición para la admisibilidad, sólo implica cierto grado mínimo de valor probatorio e inferencial. Por ello, cuando la evidencia es pertinente y no existe una regla de exclusión aplicable, la balanza debe inclinarse a favor de su admisión. Excluir evidencia pertinente sin razones de peso que lo justifique equivale a un abuso de discreción por parte del tribunal. Chiesa *Op. Cit.,* págs. 8-9.

La Regla 9 de nuestras Reglas de Evidencia regula la determinación de admisibilidad de evidencia, en lo que inicialmente se conoce como el testimonio de base. A su vez, también establece las funciones diferenciadas del juez y el jurado en formular dichas determinaciones, aunque, como regla general, es al juez y no al jurado a quien le corresponde hacerlas. *Pueblo v. Torres Figueroa,* 126 DPR 721 (1990); Chiesa *Op. Cit.,* pág. 1202. En

su inciso (A), la Regla 9 enumera las determinaciones preliminares que quedan a manos del tribunal, a saber: la capacidad y cualificación de los testigos, la existencia de privilegios evidenciarios y la admisibilidad de evidencia. En cuanto a la primera, impera una doctrina liberal. Chiesa, *Op. Cit.,* Tomo II, a la pág. 1204. Véase nota Núm. 9, *ante.* Respecto a lo último, le corresponde al tribunal determinar si la evidencia a ser ofrecida posee un valor mínimo probatorio que la haga pertinente. Así, debe existir una relación entre la evidencia ofrecida con lo que se pretende probar, la controversia del caso y el derecho sustantivo aplicable. Chiesa, *Op. Cit.,* Tomo II, a la pág. 1205.

El momento procesal para que el tribunal realice las determinaciones de admisibilidad bajo esta regla, surge, de ordinario, en el momento del ofrecimiento de la evidencia y la correspondiente objeción en el juicio. Chiesa, *Op. Cit.,* pág. 1210. Por excepción, nuestro ordenamiento dispone que algunas determinaciones de admisibilidad se resuelvan antes del juicio, previa moción y vista de exclusión de evidencia. Claro está, un tribunal puede, en su sana discreción, atender antes del juicio una moción *in limine* sobre admisibilidad.

## V

En su recurso, COSVI alega que la determinación a la que llegó su perito, el Dr. Grovas, no es distinta y habrá de confirmar la del médico consultor de la Comisión Industrial, Dr. Edgardo R. Joglar Cacho. Explica que este último examinó al demandante el 26 de marzo de 1997, a raíz de que el Sr. Rentas Matos no estuviera de acuerdo con la determinación del Fondo de incapacitarlo en el 25 por ciento. Expone que el perito de la Comisión Industrial llegó a la misma conclusión que el Dr. Grovas en torno a que el demandante tenía una incapacidad de 40 por ciento en su hombro derecho con residuales dolorosos y limitación de movimientos. Petición, pág. 7. Precisa que en vista de ello, la parte demandante no tiene razón al plantear que el Dr. Grovas habrá de tener conflictos con el Fondo en este caso.

De otro lado, COSVI apunta que la moción de descalificación fue presentada prematuramente, puesto que el tribunal no tuvo la oportunidad de escuchar y evaluar las cualificaciones de su perito o llevar a cabo el *"voir dire"* y que en este sentido, el TPI incidió, al no cumplir con las Reglas de Evidencia.

Por su parte, los demandantes-recurridos aducen que COSVI les ocultó que su perito tenía, desde hace más de diez años, contratos de servicios médicos con el Fondo como subespecialista en consultorio privado. Exponen que, contrario a lo aducido por COSVI, la opinión de su perito va a entrar en pugna con las determinaciones de incapacidad del Fondo, lo que es claramente un asunto que le está vedado al Dr. Grovas por disposición contractual.

De los autos se desprende que el contrato de 1ro de julio de 2002 entre el Fondo y el Dr. Grovas dispone en su cláusula F lo siguiente:

*"**EL SUBESPECIALISTA** reconoce que en el descargo de sus funciones profesionales tiene un deber de lealtad completa hacia **LA CORPORACIÓN**, lo que incluye el no tener intereses adversos a este organismo gubernamental. Estos intereses adversos incluyen la representación de clientes que tengan o pudieran tener intereses encontrados con **LA CORPORACIÓN**. Este deber, además, incluye la obligación continua de divulgar a **LA CORPORACIÓN** todas las circunstancias de sus relaciones con clientes y terceras personas y cualquier interés que pudiera influir en **LA CORPORACIÓN** al momento de otorgar el contrato o durante su vigencia.*

***EL SUBESPECIALISTA** representa intereses encontrados cuando, en beneficio de un cliente, es su deber promover aquello a lo cual debe oponerse en cumplimiento de sus obligaciones para con otro cliente anterior, actual o potencial. Representa intereses en conflicto, además cuando su conducta es descrita como tal en las normas éticas reconocidas a su profesión, o en las leyes y reglamentos del Estado Libre Asociado de Puerto Rico.*

*En contratos con sociedades o firmas constituirá una violación de esta prohibición el que alguno de sus directores, asociados o empleados incurra en la conducta aquí descrita. EL SUBESPECIALISTA evitará aun la apariencia de la existencia de intereses encontrados. ...".* Apéndice de COSVI, págs. 889 y 90.

Por su parte, el contrato de servicios médicos entre el Dr. Grovas y el Fondo fechado 9 de julio de 2001 dispone en su cláusula E. que *"El SUBESPECIALISTA se obliga y compromete a no representar intereses adversos a LA CORPORACIÓN de cualquier clase y ante cualquier foro".* Apéndice de COSVI, pág. 78. El contrato para el año comprendido entre el 1ro. de julio de 1996 y 30 de junio de 1997, establece en su cláusula El que el subespecialista Dr. Grovas *"se obliga y compromete a no representar intereses adversos a EL Fondo de cualquier clase y ante cualquier foro".* Apéndice de COSVI, pág. 67.

Nuestro análisis de los planteamientos de las partes con las cláusulas contractuales nos lleva a concluir que el TPI erró al descalificar el perito de COSVI, sin previamente dirimir la pugna existente entre las partes sobre si el testimonio de éste iba o no a estar en conflicto con lo resuelto por el Fondo respecto a la condición orgánica del Sr. Rentas Matos.

Ciertamente, los planteamientos de las partes requieren para su adecuada y justa resolución que el TPI escuche el testimonio del perito Dr. Grovas, en etapa previa al juicio y habiendo habido objeción de una de las partes, acorde con la Regla 9 de Evidencia. Mediante un examen al amparo de la Regla 9(A) de Evidencia, el TPI puede cerciorarse de que tal testimonio refleja el conflicto de interés contemplado en los contratos del Fondo con el Dr. Grovas o no. La actuación del TPI al descalificar al Dr. Grovas sin celebrar una vista fue a destiempo y sin base alguna. Lesionó tanto el derecho de COSVI de presentar dicho perito como el de los demandantes de que su caso fuese visto con razonable celeridad. Nótese que con una sencilla vista antes del juicio, de conformidad con la Regla 9(A) de Evidencia, se hubiese podido solucionar esta controversia. A tenor con el análisis anterior, procede, por tanto, revocar la Resolución de 8 de abril de 2003 que descalificó al Dr. Grovas.

## VI

Por los fundamentos expuestos, se expiden ambos recursos de *Certiorari* solicitados y se modifica la Resolución emitida el 11 de febrero de 2003 y se revoca la dictada el 8 de abril de 2003. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos ante dicho foro. Respecto a la resolución del 11 de febrero de 2003, el TPI deberá resolver si procede la defensa de prescripción levantada por COSVI y de resolver en la afirmativa, celebrar una vista con el propósito de dilucidar cuándo la Sra. Amelia Martínez Agosto y Amely y Awilda Rentas Martínez tuvieron conocimiento del daño y quién se lo ocasionó a los fines de determinar si sus causas de acción, acorde con el Art. 1802 del Código Civil, están prescritas o no. De no estarlo, esta reclamación será ventilada conforme a derecho.

En cuanto a la Resolución emitida el 8 de abril de 2003, se instruye al TPI celebrar una vista, acorde con la Regla 9 de las Reglas de Evidencia, 32 LPRA Ap. IV, R. 9, para determinar la naturaleza y extensión del testimonio del perito de COSV y luego de ello, resolver fundamentadamente si procede o no descalificar a dicho perito.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2004 DTA 97**

**1.** Salvo que otra cosa se indique, los documentos a los cuales nos referiremos son los que están incluidos en el Apéndice

del recurso Núm. KLCE-03-00568.

**2.** Dicha cláusula reza de la siguiente manera:

*"Esta incapacidad debe haber surgido de un accidente o enfermedad sufrido con posterioridad al otorgamiento del préstamo cubierto. La incapacidad debe impedir al deudor asegurado trabajar en cualquier empleo retribuido o realizar cualquier actividad que conlleve remuneración económica por el resto de su vida. Además, el diagnóstico clínico de esta incapacidad debe estar evidenciado por pruebas diagnósticas objetivas, entre otras, como Rayos X, CT Scan, M.R.I., laboratorios, Mielogramas, E.M.G., etc. También, el asegurado debe haberse sometido al tratamiento médico completo para su condición como lo establece el Manual de la 'American Medical Association'."* Apéndice, pág. 22

**3.** Aunque la demanda no lo articula expresamente, de los autos se desprende que el Sr. Rentas Matos obtuvo dos préstamos: uno, con la Cooperativa por $6,800 y otro con la Cooperativa de Ahorro y Crédito UITICE, para el cual COSVI también expidió un seguro de incapacidad bajo los mismos términos que el préstamo otorgado por la Cooperativa. Véase Apéndice, págs. 41 y 42.

**4.** Indicó en la contestación lo siguiente:

*"11. Que la parte aquí compareciente se encuentra realizando una investigación sobre los hechos que se alegan en la demanda, por lo que se reserva el derecho de enmendar la contestación a la demanda, tan pronto finalice el descubrimiento de prueba y su investigación, como también levantar aquellas defensas afirmativas que surjan durante el transcurso de la investigación."* Apéndice, pág. 29.

**5.** Atendido el recurso, el 20 de mayo de 2003, concedimos plazo de 30 días a la recurrida COSVI para que expresara su posición respecto al mismo. Posteriormente, el 1ro de julio de 2003, al admitir al nuevo abogado de COSVI, le concedimos 20 días adicionales. El escrito de oposición fue finalmente presentado el 31 de julio de 2003.

**6.** En resolución dictada el 23 de mayo de 2003, le concedimos a los recurridos 20 días para exponer su posición respecto al recurso instado por COSVI (KLCE-03-00616). Dicha resolución fue cumplida el 24 de junio de 2003.

**7.** Por otro lado, COSVI manifiesta que no ha incurrido en dolo, negligencia o morosidad alguna que genere daños contractuales. Además, asevera que no ha ocasionado daños contractuales al peticionario Rentas Matos. Expresa que éste tampoco ha aportado la evidencia médica necesaria para evidenciar que sufre una incapacidad física total y permanente, tal y como se define en el endoso de la póliza.

**8.** La Regla 52 sobre testimonio pericial dispone:

*"Cuando conocimiento científico, técnico o especializado sea de ayuda para el juzgador entender la evidencia o determinar un hecho en controversia, un testigo capacitado como perito en relación con la materia sobre la cual va a declarar podrá testificar en forma de opiniones o de otra manera".* 32 LPRA Ap. IV, R. 52.

**9.** Este abarcador lenguaje ha sido interpretado consistentemente por la jurisprudencia y la doctrina en forma liberal. Así, en *Pueblo v. Rodríguez Otero*, 90 DPR 861, 862 (1964), el Tribunal Supremo determinó que la cualificación de un médico como perito no dependía del hecho escueto de si poseía una licencia para practicar su profesión en determinado lugar, si no, más bien, de que su preparación, entrenamiento y experiencia le capacitaran para emitir una opinión con referencia a los puntos sobre los cuales se le interrogue. En *National Car Rental v. Caribbean Motors,* 104 DPR 704, 705 (1975), tampoco se le requirió a un testigo tener una preparación académica específica para que pudiera testificar como perito y, opinar sobre la causa de un incendio en un automóvil. En este caso, el testigo había sido miembro del cuerpo de investigaciones criminales de la policía y mecánico de aviación. El tribunal determinó que la preparación que poseía y sobre todo, la experiencia del testigo, eran suficientes para que el tribunal concluyera que podía apreciar los hechos y llegar a conclusiones informadas sobre éstos. *National Car Rental v. Caribbean Motors, supra,* pág. 76. De este modo, no solo cualifican como peritos los expertos en sentido estricto, esto es, médicos, científicos, arquitectos, ingenieros, sino cualquier persona que tenga alguna preparación o conocimiento especial sobre la materia objeto de la declaración. *San Lorenzo Trading v. Hernández,* 114 DPR 708, 710-711 (1983).

**10.** Aunque la pertinencia es necesaria para la admisibilidad de evidencia, no es por sí misma, condición suficiente. Chiesa, *Tratado de Derecho Probatorio* (Reglas de Evidencia de Puerto Rico) **Publicaciones JTS**, T. I a la pág. 1.

**11.** Notamos que gran parte del derecho evidenciario consiste de normas que operan con el propósito de excluir evidencia pertinente. Véase McCormick, Charles Cliford, *McCormick on Evidence,* West Publishing Corp., 4ta. Ed., pág. 78, y Chiesa *Op. Cit.,* págs. 1-7.

**12.** Indican, de otro lado, *"que el recurrido fue declarado totalmente incapacitado física y permanentemente por la Administración de Seguro Social, la Administración de Veteranos y la Autoridad de Energía Eléctrica. Nótese, además, que del curriculum vitae del perito de COSVI surge también que es consultor médico del Programa de Determinación de Incapacidad del Seguro Social."* Oposición de los recurridos, pág. 6. En vista de ello, apuntan que cualquier opinión del perito de COSVI, también sería contraria a la determinación de incapacidad de la Administración del Seguro Social. *Id.*